**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                                                          **Case No. : 8:05-CR-461-T-23EAJ**

**JOE NATHAN GRAHAM,**

    Defendant.

_____/

**Report and Recommendation**

Before the court are Defendant **Joe Nathan Graham's Motion to Suppress Evidence Seized as a Result of an Illegal Search and Request for an Evidentiary Hearing** (Dkt. 25), the **United States' Response to Joe Nathan Graham's Motion to Suppress Evidence Seized as a Result of an Illegal Search and Request for an Evidentiary Hearing** (Dkt. 29), and **Joe Nathan Graham's Reply to United States' Response to Joe Nathan Graham's Motion to Suppress Evidence Seized as a Result of an Illegal Search and Request for Evidentiary Hearing** (Dkt. 34).[1]  An evidentiary hearing was held on March 9, 2006.   For the reasons stated herein, I recommend that the motion to suppress be denied.

Defendant is charged with two counts of possession with the intent to distribute cocaine base and marijuana, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of such drug trafficking crimes, in violation of 18 U.S.C. § 924(c).

---

[1] This matter was referred to the undersigned by the district court pursuant to 28 U.S.C. § 636(c) and Local Rule 6.01(b) M.D. Fla. for proceedings, consideration and a Report and Recommendation on Defendant's motion to suppress (Dkt. 26).

**Findings of Fact**

On September 29, 2005, Hillsborough County Circuit Judge Ralph Stoddard issued a warrant

to search Defendant's home upon application and affidavit by Officer Joseph Blanco (Officer

Blanco) of the Tampa Police Department (TPD).  The affidavit set forth the following pertinent

information.

> During the month of September, 2005, your affiant learned from a confidential
> source that crack cocaine was being sold from inside the residence located at 2104
> East Columbus Drive. He/she further advised that the subject inside the residence
> that sells the Crack Cocaine is a black male known as "Joe." On or about September
> 7th of this year, your affiant utilized the mentioned reliable confidential informant
> to perform a controlled narcotics buy from 2104 East Columbus Drive.

> Upon debriefing, the informant advised Officer Blanco that the black male known
> as "Joe" opened the door and allowed them inside the residence. Once inside the
> residence "Joe" gave the informant the baggie of suspected Crack Cocaine and the
> informant gave him the sum of U.S. Currency. The informant exited the residence
> and returned to the affiant. Based on your affiant's training, experience, and the
> positive results of a chemical reagent test, your affiant has reason to believe, and
> does that the substance purchased by the confidential informant and given to the
> affiant is in fact Cocaine.

> A query of Tampa Electric for 2104 East Columbus Drive came back to Joe Graham
> Social Security # XXX-XX-6783.[2]

> A 1997 gold Infinity SUV bearing Florida tag PM59M has been parked next to the
> residence throughout the month of September. A NCIC/FCIC check on Florida tag
> PM59M shows the registered owner being Joe Graham (Date of Birth: 06-18-1970),
> Social Security # XXX-XX-6783 and a[n] address of 2104 East Columbus Drive,
> Tampa Florida 33605.

On October 7, 2005, TPD officers executed the warrant and searched Defendant's home.

During the search, officers seized 255 grams of marijuana, 22.1 grams of crack cocaine, a firearm,

and various paraphernalia (Dkt. 29-2).

Officer Blanco testified at the suppression hearing as a prosecution witness on the good faith

---

[2] The full Social Security number is deleted here for privacy reasons.

issue. He has approximately three years of experience in street-level to mid-level narcotics and has been involved in the drafting of approximately thirty affidavits to support search warrants.

In addition to the facts set forth in the affidavit, on September 5 or 6, 2005, the confidential informant (CI) disclosed specific and detailed information to Officer Blanco about how the cocaine would be packaged. The CI also told Officer Blanco that "Joe" was "always holding a lot of crack cocaine" and that the most drugs could be found on Friday and Saturday nights.[3] In addition, during the month of September 2005, Officer Blanco drove by Defendant's residence daily, as the residence was on the way to the police substation. Based on Officer Blanco's observations, the gold SUV was parked next to the residence a majority of the time. Finally, Officer Blanco understood from his training as a police officer that he had thirty days from the time of a controlled buy to apply for a search warrant, and ten days thereafter to execute such warrant.

## Conclusions of Law

### 1.  Parties' Contentions

Defendant argues that the search warrant should not have been issued because Officer Blanco's affidavit lacked the necessary amount of information to support a probable cause determination. In addition, Defendant contends that the time period between the controlled buy and the issuance of the warrant rendered any information supporting the warrant fatally stale.[4] Finally, Defendant argues that an officer could not have reasonably relied on the warrant, and thus, the good

---

[3]  The search warrant was executed on October 7, 2005, a Friday.

[4] At the suppression hearing, Defendant withdrew any argument that the eight day period between the issuance and the execution of the warrant invalidated the search warrant. See Fed. R. Crim. P. 41(e); Fla. Stat. § 933.05 (2005)(both the federal rule and the state statute set a 10-day limit on execution of search warrants).

faith exception to the exclusionary rule does not apply. Therefore, Defendant seeks the suppression of the evidence found during the search of his home on October 7, 2005.

In response, the Government asserts that when viewing the totality of the circumstances, the affidavit supported a probable cause determination. However, the Government also asserts that this court need not decide whether there was probable cause supporting the issuance of the warrant because Officer Blanco's conduct fell within the good faith exception to the exclusionary rule. Finally, the Government contends that the lapse of time between the controlled buy and the issuance of the warrant was not long enough to dispel probable cause and therefore, the information supporting the warrant was not stale but, in any event, the good faith exception applies.

## 2. **Probable Cause Determination**

The court first considers whether the information in the affidavit supported a probable cause determination. Defendant argues that the affidavit lacked information from which a neutral and detached magistrate could have found probable cause to issue a search warrant.

Judicial determinations of probable cause to issue search warrants are given great deference by the courts. United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). "Probable cause to support a search warrant exists when the totality of the circumstances allow[s] a conclusion that there is a fair probability of finding contraband or evidence at a particular location." Id. Because every affidavit and set of circumstances is unique, affidavits must be examined on a case-by-case basis. United States v. Martin, 297 F.3d 1308, 1313 (11th Cir.), cert. denied, 537 U.S. 1076 (2002). The following guidelines apply for determining the validity of a warrant affidavit: (1) demonstration of a connection between the defendant and the location to be searched; (2) demonstration of a link between the location and criminal activity; and (3) demonstration of the informant's veracity and

basis of knowledge. Id. at 1314. It is critical that the affidavit state sufficient facts to conclude that evidence or contraband will probably be found at the premises to be searched. Id.  However, "there is no need to establish the informant's veracity if law enforcement officials have sufficient, independent corroboration of the information." Id.

In the instant case, the affidavit contains several important facts that demonstrate a connection between  Defendant and the residence to be searched, namely that the electricity was in Defendant's name and an SUV registered in his name was seen parked next to the residence throughout the month of September. Those facts, in conjunction with the fact that the CI advised Officer Blanco that "Joe" allowed the CI inside the home and gave him/her the baggie of cocaine, were sufficient to connect Defendant with the location to be searched. See United States v. Foy, 28 F.3d 464, 474 (5th Cir.), cert. denied, 513 U.S. 1031 (1994).

The facts in the affidavit also sufficiently link the residence that was to be searched with the criminal activity and corroborates the CI's information that Defendant was selling drugs from the residence.  The affidavit contains Officer Blanco's detailed description of the controlled buy[5] on September 7, 2005, and states that he drove the informant to a location within sight of  Defendant's residence. The affidavit also states that Officer Blanco observed the CI enter and exit the residence through the same door. Further, the affidavit states that Officer Blanco searched the CI for

---

[5] It is not disputed that Officer Blanco and the CS performed a controlled narcotics buy. A controlled buy is one that the police officer supervises carefully, including a pat-down and search of the informant before the purchase and prompt delivery of the contraband after the purchase. United States v. Harper, 802 F.2d 115, 120 (5th Cir. 1986).  In his affidavit, Officer Blanco stated that he "searched [the CS] for contraband and currency with negative results" before supplying the CS with money to be used for the buy. The buy was then conducted under police surveillance. After the transaction, the CS returned directly to Officer Blanco's vehicle and handed him the suspected crack cocaine inside a ring baggie. Officer Blanco again searched the CS for contraband and currency with negative results.

contraband and currency before the buy with negative results, and upon return to the car the CI

handed the officer a ring baggie containing suspected crack cocaine which was confirmed on testing

as crack cocaine.

Finally, contrary to Defendant's argument, there was no need to establish the CI's veracity

in the affidavit because the controlled buy was an independent corroboration of the CI's credibility.

See United States v. Gibson, 123 F.3d 1121, 1124 (8th Cir. 1997).

Because Officer Blanco's affidavit sufficiently established a nexus between the location to

be searched, Defendant, and the criminal activity, and because the controlled buy independently

corroborated the CI's information, there was sufficient information in the affidavit for the court to

find the information reliable.

Defendant also maintains that the single controlled buy, conducted on September 7, 2005,

was insufficient to establish probable cause that drugs were at the residence on the date of the

warrant's issuance, September 29, 2005.  In response, the Government argues that the lapse of time

was not long enough to dispel probable cause, and that even if the information relied upon was stale,

the good faith exception applies.

In the context of probable cause, the staleness doctrine "requires that the information

supporting the government's application for a warrant must show that probable cause exists at the

time the warrant issues." United States v. Bervaldi, 226 F.3d 1256, 1264 (11th Cir. 2000). However,

"[t]here is no particular rule or time limit for when information becomes stale." Id. at 1265.  The

facts of each case are unique and must be determined on a case by case basis. The most important

factor in determining the duration of probable cause is the inherent nature of the crime, and time is

less significant when "an affidavit recites activity indicating protracted or continuous conduct." Id.

However, the close question posed in this case is whether the affidavit recites sufficient information to permit an inference of protracted or continuous conduct. In addition to outlining the controlled buy on September 7, 2005, the affidavit states that Officer Blanco learned from the CI in September 2005 that crack cocaine "was being sold from the residence." Officer Blanco then corroborated this information through the controlled buy on September 7, 2005. However, as Defendant points out, there is no other information in the affidavit such as repeat drug buys, surveillance of Defendant's residence for drug activities, or trash pulls that might indicate continuous or protracted drug activity. Thus, the lack of additional information for twenty-two days after a single controlled buy presents a "close call" on the issue of staleness based on the four corners of the affidavit. Therefore, the court proceeds to the analysis of whether the good faith exception is applicable in this case.

### 3. The Leon Good Faith Exception

United States v. Leon, 468 U.S. 897 (1984), stands for the principle that "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." Martin, 297 F.3d at 1313; see also United States v. Robinson, 336 F.3d 1293, 1295–1296 (11th Cir. 2003) . There are only four situations where Leon's good faith exception does not apply:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

Martin, 297 F.3d at 1313.  The only exception that the Defendant has raised is whether the affidavit

was so lacking in indicia of probable cause that the officer's reliance on that warrant was entirely

unreasonable because the affidavit was "bare bones" and could not be reasonably relied upon by a

trained officer.

While the court must look only at the face of the affidavit in determining whether an affidavit

lacked sufficient indicia of probable cause, the court may, however, consider information outside

the four corners of the affidavit to determine whether the good faith exception applied, i.e. whether

the officer reasonably relied upon the warrant. Id.; see also Robinson, 336 F.3d at 1297. Therefore,

in addition to the facts contained in the affidavit, the court considers Officer Blanco's testimony in

determining whether he reasonably relied upon the warrant.  However, even if limited to the

affidavit, the good faith exception would apply in this court's view.

In the affidavit, Officer Blanco stated that he used a "reliable confidential informant to

perform a controlled narcotics buy" from Defendant's address. The affidavit describes that

transaction in detail. In addition, Officer Blanco testified that prior to the controlled buy, the CI told

him on or around September 5 or September 6 specific details about Defendant and the residence,

including a physical description of Defendant, the specific way that the narcotics would be

packaged,[6] and that Defendant was "always holding a lot of crack cocaine because he was 24/7

selling." The CI further advised Officer Blanco that the most drugs would be found at the residence

on Friday and Saturday nights, days that were "heavy" for drug deals. Officer Blanco further

---

[6] Officer Blanco also testified that the CI advised him that Defendant packaged drugs in a very specific way, with each piece of crack in its own separate ring baggie. According to Officer Blanco, this type of packaging is very unique to Defendant and is not often used in the East or South Tampa areas. Therefore, when the fruit of the corroborated buy was a single crack rock packaged in its own ring baggie, the CI's credibility was bolstered.

testified that simultaneously with the controlled buy on September 7, he also observed other "foot traffic"—another person who approached the residence and exited about the same time as the CI.[7] Officer Blanco did not include this information in the affidavit.  See Martin, 297 F.3d at 1315–1316 (although not entirely unreasonable for the officer to believe that his affidavit supported probable cause, the facts in the affidavit "leave much to be desired").  It was not a "bare bones" affidavit, however.

Finally, Officer Blanco testified that pursuant to his training as a Tampa Police Officer, he knew that from the time of a controlled buy, he had thirty days to apply for a search warrant and ten days thereafter to execute it.[8]  Most importantly, however, there is nothing in the record to suggest that Officer Blanco's reliance on the warrant was objectively unreasonable. Therefore, even assuming that the information stated in the affidavit was stale, Officer Blanco could reasonably rely on the issuance of the search warrant in executing the search.  Therefore, the good faith exception

[7] The affidavit did not mention the presence of another person during the controlled buy and stated that the informant "returned to the affiant's vehicle without having contact with anybody along the way." Officer Blanco clarified this point during his testimony, stating that "without having contact with anybody along the way" meant that he observed no hand-to-hand or physical contact between the CI and another person during the controlled buy.  This discrepancy does not present a Franks v. Delaware, 438 U.S. 154 (1978) issue.

[8] Although the search conducted in the instant case was pursuant to a state warrant, federal law controls the admissibility of the products of state searches and seizures in federal court.  United States v. Clay, 355 F.3d 1281, 1283 (11th Cir.), cert. denied, 543 U.S. 999 (2004).   However, Florida case law is still instructive on the issue of good faith because at the time of the search, Officer Blanco had no way of knowing exactly what quantity of drugs would be found or whether the case would be prosecuted in federal court.  Florida courts have generally held that a warrant is not stale if the issuance of the warrant occurs within thirty days of the observation of the evidence establishing probable cause.  See State v. Lewis, 605 So. 2d 590, 591 (Fla. 2d DCA 1992); Montgomery v. State, 584 So. 2d 65, 67 (Fla. 1st DCA 1991). The current state of the law in Florida, combined with Officer Blanco's testimony that he believed he had thirty days after the controlled buy in which to apply for a search warrant, aids this court in determining that Officer Blanco reasonably relied on the search warrant.

is applicable in the instant case.

## Conclusion

Having conducted an evidentiary hearing on Defendant Graham's motion to suppress, and having considered the legal arguments of the parties, the court finds that there was sufficient information in the arrest warrant to support a finding of probable cause. The court further finds that even though there is a "close call" on whether the information supporting this information was stale, the good faith exception clearly applies and the evidence seized as a result of the search should not be suppressed.

The court **RECOMMENDS** that Defendant **Joe Nathan Graham's Motion to Suppress Evidence Seized as a Result of an Illegal Search** (Dkt. 25) be **DENIED**.


Date:   March 10, 2006

ELIZABETH A JENKINS
United States Magistrate Judge


Case Number: **Case No.: 8:05-CR-461-T-23EAJ**


## Notice to Parties

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
All Counsel of Record
District Court Judge